## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| **FLEUR S. BRESLER,** *as Co-Personal Representative of the Estate of Charles S. Bresler***, and SIDNEY BRESLER,** *Individually and as Co-Personal Representative of the Estate of Charles S. Bresler* | * * * * * * * | | |
| Plaintiffs | * * | Civil No. | **PJM 09-2957** |
| v. | * * | | |
| **WILMINGTON TRUST COMPANY,** *et al.* | * * * | | |
| Defendants | * | | |

_____

| | | | |
|---|---|---|---|
| **FLEUR S. BRESLER,** *as Co-Personal Representative of the Estate of Charles S. Bresler***, and SIDNEY BRESLER,** *as Co-Personal Representative of the Estate of Charles S. Bresler* | * * * * * * | | |
| Plaintiffs | * * | Civil No. | **PJM 12-3295** |
| v. | * * | | |
| **WILMINGTON TRUST COMPANY** | * * * | | |
| Defendant | * | | |

## **OPINION**

The Court deems it convenient to deal with certain procedural motions and arguments of the parties in an opinion separate from its opinion dealing with the merits issues in these cases.

1

A. **Real Party in Interest**

Wilmington Trust Company and its affiliate (collectively, "WTC") ask to have these actions dismissed because they submit that the Breslers as Co-Personal Representatives of the Estate of Charles ("Charlie") Bresler and individually are not the real party in interest and, further, because the Court purportedly improperly proposed at trial that the Bresler Trust be added as Party-Plaintiff. *See* WTC's Motion for Judgment as a Matter of Law (Paper No. 602) at 33.

Again, some background is appropriate to place these arguments in context.

As more precisely described in the Court's accompanying opinion on the merits, Charlie entered into agreements with WTC whereby it would provide structure and funding for insurance on his life.[1]

For certain tax and asset management reasons, the policies were to be purchased pursuant to what is known as a premium financing plan, whereby WTC would lend money for the payment of premiums to a life insurance trust (the "ILIT"), of which WTC would be trustee; the ILIT would pay the premiums; and, pursuant to a separate agreement, WTC would manage any assets that Charlie might place with it, including any assets that might be placed as collateral for loans WTC might make to the ILIT.

When a dispute arose over whether Charlie had any obligation to post collateral for the loans or at least over what period it had to be posted, Charlie and, after his death, his Co-Personal Representatives—his wife Fleur and his son Sidney—sued WTC for breaches of the underlying premium financing agreement. After Charlie's death, Fleur and Sidney filed a separate suit for return of certain collateral based on the Investment Management Agreement

---

[1] As throughout, no disrespect is intended by the use of Charlie Bresler's given name. Given names are used only for the purpose of distinguishing among Charlie Bresler, his wife Fleur, and his son Sidney.

("IMA") and Pledge Agreement Charlie had signed. After more than three years of litigation, WTC—for the first time at trial—suggested that Fleur and Sidney, as Co-Personal Representatives of Charlie's estate (and Sidney as Trust Adviser), were not the appropriate parties in interest to recover damages against it. Trial Transcript ("Tr."), Jan. 23, 2014, at 62:14–65:14. WTC argued that such damages as might be assessed should flow directly to the ILIT and that only the Trustee of the ILIT, namely, WTC or a surrogate, was the proper party to bring suit on behalf of the ILIT relative to the basic Agreement.[2]

The Court is unpersuaded.

Not only does this argument arrive very late in the day; it also blinks at reality to suggest that the Bresler Estate is not the real party in interest in this case. Charlie in his individual capacity made an agreement with an undifferentiated WTC that structured the plan for insurance on his life supposedly in such a way so as to alleviate the burden of death taxes on his heirs, and from the outset Charlie (and later Fleur and Sidney as his Co-Personal Representatives) have consistently contended that WTC breached its agreement with him. WTC itself just as consistently has described the plan as one meant to benefit Charlie, Fleur, their heirs, and his estate. PTX 11, at 2–3. The record thus supports the conclusion that Charlie Bresler's estate suffered injury as a result of WTC's breach and is therefore entitled to any damages flowing from that breach.

Even assuming the ILIT were the only injured party and that damages, if any, should flow solely to it, as WTC itself has acknowledged: "where there is a conflict between the interests of the trustee and the beneficiaries, or when other circumstances exist whereby

---

[2] Indeed, WTC goes as far as to suggest that any damages should be placed into the insurance policies, and only then flow to the ILIT upon Fleur's death (presumably after all of its loans and interest are repaid). WTC does not, however, suggest by what authority the Court might order the non-party insurance companies to accept these funds, which the Court, in any event, would not be inclined to do.

representation by the trustee may be inadequate, the beneficiaries will be granted intervention." *Bd. of Trs. of Emp. Ret. Sys. v. Mayor and City County of City of Baltimore*, 562 A.2d 720, 729 (Md. 1989); *see also* WTC's Motion to Dismiss (Paper No. 39) at 11 n.11 (quoting same). The fact that WTC wore at least three hats in the transaction—as Trustee of the ILIT, as Investment Manager under the IMA, and as Lender under the basic premium financing agreement—an incestuous triad that WTC seems to blithely ignore—created a glaring conflict of interest that, to a virtual certainty, would never have resulted in WTC *qua* Trustee suing WTC *qua* Lender, or either of these WTC components suing WTC *qua* investment manager. Since an undifferentiated WTC has been the Breslers' essential antagonist throughout the dispute, it made eminent good sense for Sidney, as "Trust Adviser" and beneficiary under the ILIT, to pursue the breach of agreement claim against WTC on behalf of himself and on behalf of the ILIT.

Were that not enough, WTC never filed a motion to have the ILIT joined as a necessary party nor did it seek to have the case dismissed on the grounds that Charlie's estate was an improper party. Nor has WTC acted timely in any event. *See* Fed. R. Civ. P. 17(a)(3), ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action.").

The Court did not, as WTC suggests, offer to substitute the ILIT as a plaintiff in this case. As WTC correctly points out, the Court had previously ruled that the ILIT did not itself have the capacity to sue. *See* Order (Paper No. 150) (granting-in-part WTC's Motion to Dismiss). But a full reading of the Court's colloquy with counsel shows what the Court suggested—that whatever standing Fleur and Sidney might have to bring claims on behalf of Charlie's estate and whatever capacity Sidney might have as Trust Adviser and as a beneficiary of the trust to bring

suit—the Breslers could simply replace WTC as a Trustee and have the new Trustee added as a plaintiff.

> Mr. Bresler can dismiss [WTC] as trustee and name another trustee, and then just add them as plaintiff, because the Court has discretion. Look at Rule 21. Look at [Wright] and Miller at 1688—1688 and 1688.1. But that's a fairly standard proposition, and it's really meant so that you don't end up playing gotcha type litigation.

Tr., Jan. 23, 2014, 87:2–7; *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may *at any time*, on just terms, add or drop a party.") (emphasis added). Adding a necessary party can, in fact, occur as late as on petition to the Supreme Court. *See Mullaney v. Anderson*, 342 U.S. 415, 417 (1952). The fact that the Breslers may have chosen not to select a substitute Trustee of the ILIT makes little difference.[3] The Breslers are the true parties in interest in these proceedings.

WTC's late-conceived argument that they are the real party in interest is therefore DENIED.

### B. **WTC's *Daubert* Motion to Exclude the Expert Opinions of All Plaintiffs' Proffered Experts (Paper No. 501)**

In its Motion to Exclude the Expert Opinions of All Plaintiffs' Proffered Experts, made both before trial (Paper No. 501) and renewed at trial, WTC argues that the Court erred by not precluding Plaintiffs' accounting expert Robert Pugh from testifying. Citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), WTC suggests that Pugh lacked "reliable principles" that were "reliably applied," and did not base his damages calculations on "sufficient facts or data."

---

[3] The Court notes that, contrary to what WTC seems to suggest, it is not as simple as the Breslers picking a name out of a hat to serve as Trustee and having the new Trustee join the suit as Party Plaintiff on behalf of the Trust. The Trust Agreement limits the entities that may serve as Trustee to "any bank or trust company that has, as of the date of appointment, . . . trust or other investment assets under management of at least one billion dollars. Trust Agreement (PTX 12) Art. 16 A.2. Institutions managing more than $1 billion dollars which might be agreeable to being named as Trustee for the sole purpose of serving as a nominal plaintiff in a suit against another institution managing more than $1 billion may be hard to find.

5

The Court disagrees.

Under Rule 702, "the trial judge must ensure that any and all [expert] testimony or evidence admitted is not only relevant but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). This means the expert's testimony must be based on sufficient facts or data, is the product of reliable principles and methods, and that the expert has reliably applied those methods to the facts of the case. Fed. R. Evid. 702. In determining an expert's admissibility, "the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

Pugh testified that he had been a CPA for nearly 25 years. This included his use of "spreadsheets, accounting techniques, and modeling the financial consequences of those various types of transactions." Tr., Jan. 17, 2014, at 32:15–24; *see also id.* at 35:10–17. The Breslers engaged Pugh to render an opinion, *inter alia*, as to what the value of the life insurance policies on Charlie's and Fleur's lives would be had WTC performed as the Breslers contended it should have, as compared to the actual value the policies had as of the date of trial and through Fleur's life expectancy. Tr., Jan. 17, 2014, at 34:5–14. Pugh further testified that he relied on numbers provided by WTC's expert as well as standard accounting formulae to develop his report. When WTC updated its numbers at trial, Pugh revised his own calculations based on the new data. WTC had every opportunity to attack Pugh's credibility at trial and most assuredly made vigorous attempts to do so, but in the Court's judgment WTC has provided no grounds for the Court to have barred or struck his testimony under Rule 702. *See Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources

6

of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

At trial, Pugh sat through four direct and three cross-examinations. The jury had ample opportunity to evaluate his calculations. They ultimately accepted them.

WTC's Motions to Exclude the Expert Opinions of All Plaintiffs' Proffered Experts, made pre-trial and renewed post-trial are therefore DENIED.

## C. **Plaintiffs' Motion to Strike Declaration of Kevin Stephens; WTC's Motion to Strike Plaintiffs' Reply Brief Supporting Motion to Strike Declaration of Kevin Stephens (Paper Nos. 609, 631).**

In contrast, as ruled at the August 8, 2014 hearing on the post-trial motions and separately ordered (Paper No. 641), the Court GRANTS Plaintiffs' Motion to Strike the Declaration of Kevin Stephens, WTC's expert, and DENIES WTC's Motion to Strike Plaintiffs' Reply Brief in support of same.

The reason the Court ruled as it did is obviously not meant to suggest that Stephen's declaration may not be based on "reliable principles reliably applied" or that his damage calculations may not derive from "sufficient facts or data." Quite simply, the reason for granting the Motion to Strike is that the declaration comes after trial. The observations and conclusion Stephens proffers now may or may not have influenced the jury's decision-making had they been timely offered, but what is clear is the effect of what WTC is proposing to do: the Breslers' counsel is precluded from challenging—in the presence of the jury—what Stephens now puts forth. WTC, of course, has always been free to argue post-trial what Stephens actually said at trial and may do so by quoting his trial testimony. What it may not do is re-package Stephens's testimony the day after the fair, arguing that this is what Stephens meant to say or this is what he ought to have said at trial.

D.  **Plaintiffs' Motion to Disregard Wilmington Trust Company's Supplement to Post-Trial Hearing (Paper No. 649)**

For similar reasons, Plaintiffs' Motion to Disregard Wilmington Trust Company's Supplement to Post-Trial Hearing is GRANTED.  The parties have had numerous opportunities to argue this case, both before the jury and before the Court.  They were given extensive opportunities to develop post-trial briefing on their various claims, as well as an all-day hearing on these motions.  Whatever WTC wanted to argue, it could have and should have argued in those settings.  There is no need to allow further briefing on what has already been exhaustively put forth.

E.  **Effect of Verdict on Remaining Claims**

Apart from the verdict on the consolidated contract claims in these cases, a number of other claims remain—among them claims of professional negligence, negligent misrepresentation, and fraud and deceit—which the Breslers have brought against WTC and its operatives Messrs. Wileczek and Waschull.  There are also counter-claims against the Breslers.  The Court appreciates that Messrs. Wileczek and Waschull, in particular, are anxious to have the claims against them addressed (and, if they had their way, dismissed) without delay.

The Court, however, has determined not to act as to any of the remaining claims at this time.  The whole purpose of consolidating and trying the underlying Breslers' contract claims against WTC separately from all other claims was that a successful result for the Breslers on those claims might well moot most if not all the other claims pressed against WTC, Wileczek, and Waschull, making any trial against them unnecessary.  Indeed, the jury's verdict indicates a substantial win for the Breslers on the contract counts.  But until the present contract phase of the litigation is concluded, presumably following an appeal to the Fourth Circuit, it obviously cannot be said with finality that the Breslers have prevailed nor can it safely be said what the outcomes

might be with respect to the remaining claims. At the same time, dismissing the non-contract claims at this juncture—especially those against Wileczek and Waschull and WTC as their employer—would not only raise statute of limitations problems with respect to the claims against them; it would undoubtedly occasion a separate appeal, with all the attendant time and expense, which might well be needless if the current verdict on the contract claims against WTC is upheld.

For these reasons, the Court declines to act on the merits of the remaining claims in these cases.

That said, however, in order to facilitate the appeal of the current verdict, the Court is prepared to sever all the non-contract counts and place them in a new docket, or entertain some other disposition that will lead to a final decision on the contract claims at the earliest possible date.

Counsel for the parties shall consult with one another and promptly advise the Court how they wish to proceed in this regard.

A separate Order will ISSUE.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

March 24, 2015