IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FLEUR S. BRESLER, *as Co-Personal Representative of the Estate of Charles S. Bresler,* and SIDNEY BRESLER, *Individually and as Co-Personal Representative of the Estate of Charles S. Bresler* | * * * * * * * * | |
| Plaintiffs | * * | Civil No. PJM 09-2957 |
| v. | * * | |
| WILMINGTON TRUST COMPANY, et al. | * * * | |
| Defendants | * | |

| | | |
|---|---|---|
| FLEUR S. BRESLER, *as Co-Personal Representative of the Estate of Charles S. Bresler,* and SIDNEY BRESLER, *as Co-Personal Representative of the Estate of Charles S. Bresler* | * * * * * * * | |
| Plaintiffs | * * | Civil No. PJM 12-3295 |
| v. | * * | |
| WILMINGTON TRUST COMPANY | * * | |
| Defendant | * | |

## OPINION

In Civil No. PJM 09-2957, Fleur Bresler and Sidney Bresler, as Co-Personal Representatives of the Estate of Charles ("Charlie")[1] Bresler, sued Wilmington Trust Company

---

[1] As with all the Court's opinions in this case, no disrespect is intended by the use of Charlie Bresler's given name. Given names are used only for the purpose of distinguishing among Charlie Bresler, his wife Fleur, and his son Sidney.

1

("WTC") for alleged breaches by WTC of certain agreements designed to provide life insurance for Charlie and Fleur.[2]

Following a four-week trial, a jury concluded that WTC had breached its agreements with Charlie and awarded the Breslers in excess of $23 million in damages. On March 25, 2015, the Court issued an Opinion and Order denying WTC's post-trial Motion for Judgment as a Matter of Law and entering Partial Judgment in favor of the Breslers. Paper Nos. 660 and 661. On April 22, 2015, Plaintiffs filed a Motion to Alter/Amend that Judgment to Include Pre-judgment and Post-judgment Interest on the jury's award. For the reasons that follow, the Motion to Alter/Amend Judgment (Paper No. 668) will be **GRANTED-IN-PART** and **DENIED-IN-PART**. Some background is appropriate to place the Motion in context.

## I.
### A.

As more precisely described in the Court's March 25, 2015 Opinion dealing with the parties' post-trial motions, at the beginning of 2004, Charlie entered into agreements with WTC whereby it would provide structure and financing for insurance on his life (and eventually Fleur's). For tax and asset management reasons, the policies were to be purchased pursuant to what is known as a "premium financing plan," whereby WTC would lend money for the payment of annual premiums to a trust owning life insurance policies on the lives of Charlie and Fleur (the "ILIT"), of which WTC would be trustee; the ILIT would pay the premiums; and, pursuant to a separate agreement, WTC would manage any assets that Charlie might place with it, including any assets that might be placed as collateral for loans WTC might make to the ILIT.

---

[2] In this docket, Sidney also filed suit in his individual capacity. In Civil No. PJM 12-3295, Fleur and Sidney, as Co-Personal Representatives of Charlie's Estate, brought a second suit against WTC, claiming that it breached a related agreement—specifically, an Investment Management Agreement—by refusing to return certain collateral to Charlie's estate that it allegedly promised to return upon his death. The Court-awarded equitable relief in No. 12-3295 is not at issue in the present motion.

In 2005, the second year of the plan, a dispute arose over whether Charlie had assumed a continuing obligation to post collateral for the loans and whether WTC was obligated to lend a specific amount to the ILIT each year. In 2009, after four years of failing to resolve the dispute, and fearing that the policies would lapse, Fleur went into the market and obtained "replacement" term insurance on her own life, which required annual payments between $1.4 and $1.5 million. Also in 2009, Charlie brought this suit against WTC and, after his death, his wife Fleur and his son Sidney continued its prosecution.[3]

After more than four additional years in litigation, trial was held on the matter, lasting for most of January 2014. The Breslers argued to the jury that the premium financing plan only obligated Charlie to post an initial $3.7 million in bonds as collateral, in exchange for which WTC would lend $5.5 million annually to the ILIT both to pay the premiums on the insurance policies and to "overfund" them. Unlike typical life insurance policies, which only provide fixed death benefits, the ILIT policies consisted of two components: (1) a death benefit and (2) an investment account which would increase in value each year according to an interest rate known as the "crediting rate," which in turn would increase the amount of the death benefit. Since the crediting rate that the insurance companies would be paying on the policies was projected to be higher than the borrowing rate WTC proposed to charge for the loans it would make, the ILIT could profit simply by borrowing money from WTC at the lower interest rate while earning higher interest at the crediting rate. All of the "overfunding" would go into the interest-bearing component.[4]

---

[3] During their efforts to resolve their differences, the parties entered into a tolling agreement as to any litigation; hence, the delay in Charlie's filing suit.
[4] In the Breslers' case, the ILIT purchased three policies with a combined death benefit of $50 million, with the potential to earn far more by "overfunding" the investment account components of each of the policies.

According to the Breslers, instead of having its loans secured by annual posting of collateral, WTC's "security" was that it would have its loans repaid with interest out of the proceeds of the policies following Charlie's and Fleur's deaths, and the Bresler survivors would take home the balance that had accrued in the tax-sheltered ILIT (the "Net-in-Trust"). Because Charlie refused its demands to post substantial collateral each year, WTC limited its lending. Specifically, after 2004, it loaned only enough to make the minimum premium payments on the policies and did not provide any overfunding, depriving the Breslers of what they believed they were owed under the plan—namely, the money accrued in the interest-bearing portion of the insurance policies.

At trial, the Breslers called an expert, accountant Robert E. Pugh, who calculated what the Net-in-Trust would have been had WTC performed as they believed it should have. Pugh offered two sets of numbers. The first calculated what the Net-in-Trust should have been through the date of trial: $10,668,667 (the "Present Shortfall"); the second calculated what the Net-in-Trust would be through the end of Fleur's life, based on mortality tables projected to occur in 2019: $8,793,005 (the "Future Shortfall"). The Breslers also sought damages to compensate for the approximately $7.75 million Fleur would have spent through the end of 2014 to obtain and maintain her replacement insurance policies.

The jury found in favor of the Breslers as to all these components, albeit in an amount somewhat less than what Fleur sought *vis-à-vis* the replacement policies, and awarded them $23,361,692 in damages. That number was composed of three parts: (1) $10,668,687 in Present Shortfall damages; (2) $8,793,005 in Future Shortfall damages; and (3) $3.9 million for Fleur's replacement insurance policies.

The jury verdict did not resolve, however, all the issues related to the contract claims. The parties had also sought various forms of equitable relief to be decided by the Court—including specific performance and the possibility of a "tax gross-up" of the damages. Accordingly, the Court deferred entering Judgment and instead, with the consent of the parties, afforded them an extensive briefing schedule, which was followed by an all-day motions hearing on August 8, 2014. *See* Paper No. 605 (Order setting briefing schedule). The parties continued briefing the issue of the "tax gross-up" issue through November 2014.[5] On March 24 and 25, 2015, the Court issued two separate Opinions and Orders addressing the parties various post-trial motions, which denied WTC's Motion for Judgment as a Matter of Law, and ordered Partial Judgment in favor of the Breslers with respect to their equitable claims.[6]

The Court now considers the Breslers' request for an award of both pre- and post-judgment interest, filed on April 22, 2015.

## II.

The standards for determining pre- and post-judgment interest include the following:

"[State] law governs the award of prejudgment interest in a diversity case." *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). On the other hand, "[f]ederal law, rather than state law, governs the calculation of post-judgment interest in diversity cases." *Id.*

---

[5] By "tax gross-up," the Breslers meant that the Court should increase the jury's award in an amount sufficient to cover any taxes that might be due on the award. It was not necessary for the Court to decide the issue, since the parties eventually agreed by joint motion that any final, non-appealable judgment requiring payment of damages would be paid directly into the ILIT, with whatever tax consequences might flow from the arrangement. *See* Paper No. 656 (Order).

[6] At the time, Case No. 09-2957 also included non-contract claims held in abeyance pending the resolution of the contract claims. *See* Paper No. 481 (Order). Accordingly, the Court was not in a position to enter an Order of Final Judgment in the case. The non-contract claims have since been severed pursuant to Rule 21 of the Federal Rules of Civil Procedure and assigned to a new docket—Case No. PJM 15-cv-1557. Paper No. 677 (Order). With the resolution of the present Motion, the Court, after further consultation with the parties, will be able to enter a Final Order of Judgment in Case No. 09-2957.

5

Under Maryland law, "whether a party is entitled to pre-judgment interest generally is left to the discretion of the fact finder." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 777 (Md. 2004). There are exceptions to this rule. Pre-judgment interest is available "as a matter of right" when "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to the judgment so that the effect of the debtor's withholding payment was to deprive the creditor of the use of a fixed amount as of a known date." *Buxton v. Buxton*, 770 A.2d 152, 165 (Md. 2001) (internal citations and quotations omitted). For example, this "arises under written contracts to pay money on a day certain, . . . in actions on bonds or under certain contracts providing for the payment of interest . . . and in sums payable under leases as rent." *Id.*

"In other cases, *e.g.*, claims involving personal injuries, pre-judgment interest is unavailable because the jury is placing a dollar value on an unliquidated claim for pain and suffering." *Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 847 (D. Md. 2005).

"Between these poles of allowance as of right and absolute non-allowance is a broad category of contract cases in which the allowance of the pre-judgment interest is within the discretion of the trier of fact." *Buxton*, 170 A.2d at 165. In such cases, pre-judgment interest may be awarded "according to the equity and justice appearing between the parties." *I.W. Berman Prop. v. Porter Bros., Inc.*, 344 A.2d 65, 74 (Md. 1975).

With respect to post-judgment interest, "federal law mandates the awarding of post-judgment interest." *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir. 1993). "Such interest shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). As the Supreme Court has made clear, this statutory mandate does not mean that post-judgment interest runs from the date of the verdict, rather solely from the date of the entry of judgment. *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 834–35 (1990).

## III.

### A.

The Breslers argue that they are entitled to post-verdict/pre-judgment interest on the $10,668,667 in Present Shortfall Damages and the $3.9 million in damages for Fleur's replacement policies from the date of the verdict through the entry of the Court's Partial Judgment. That is, they seek interest on $14,568,667 from January 30, 2014, through March 25, 2015. Interest on that sum would equal $1,019,807.[7]

According to the Breslers, they are entitled to the post-verdict/pre-judgment interest as a "matter of right" under Maryland law because the amount due became "certain, definite, and liquidated" prior to the judgment date, *i.e.*, on the day the verdict was delivered. They suggest that, alternatively, even under a discretionary standard, the Court should award post-verdict/pre-judgment interest at the Maryland pre-judgment interest rate since WTC has been dilatory in paying them any portion of the jury verdict. *See* Paper No. 668 (Pl.'s Mot. at 4).

The Breslers also urge the Court to award pre-judgment interest on the premium payments made by Fleur for her replacement insurance policies, stretching back to the first payment in 2009. According to their calculations, that amount would total $418,496. Finally, the Breslers seek post-judgment interest at the federal statutory rate on the total money judgment of $23,361,692.

WTC, for its part, argues that the Breslers are not entitled to interest of any kind. First, it argues that the jury verdict does not transform the Breslers' unliquidated claims into liquidated claims entitling them to pre-judgment interest as a matter of right. According to WTC, the

---

[7] "The Legal Rate of Interest shall be Six per cent per annum; unless otherwise provided by the General Assembly." Md. Const. Art. III § 57; *see also Harford Cnty. v. Saks Fifth Ave. Distrib. Co.*, 923 A.2d 1, 14 (Md. 2007) ("[P]re-judgment interest shall be calculated at the legal rate of six percent per annum.") (citing Md. Const. Art. III § 57).

7

Breslers' theory would turn every jury damages award into a liquidated award mandating pre-judgment interest. Moreover, WTC argues that the Breslers waived their right to pre-judgment interest when they failed to present the issue to the jury.

Even if the Court were to exercise its discretion regarding the awarding of pre-judgment interest, WTC suggests that it has not acted in bad faith in this litigation justifying such an award and, in any event, it says, the Breslers are not being unfairly deprived of the use of these funds since at best they can have no entitlement to the damages until Fleur passes away. Finally, WTC argues that the award of any pre- or post-judgment interest is improper since it would essentially duplicate the damages already awarded by the jury pursuant to the Breslers' expert's calculations.

**B.**

The Court arrives at a split decision.

**1.**

The Breslers are not entitled to post-verdict/pre-judgment interest. Although they cite a series of cases where courts have specifically addressed and ultimately awarded post-verdict/pre-judgment interest, in each of those cases the courts were applying the laws of states that explicitly provide for such interest. *See Adrian v. Town of Yorktown*, 620 F.3d 104, 107 (2d Cir. 2010) ("Under New York law, post-verdict prejudgment interest is mandatory. *See* N.Y.C.P.L.R. § 5002."); *Massachusetts Eye & Ear Infirmary v. QLT, Inc.*, 514 F. Supp. 2d 144, 145 (D. Mass.

2007) (applying Massachusetts law)[8]; *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2012 WL 3637189, at *3 (E.D.N.Y. Aug. 22, 2012) (applying New York law).

Maryland law, however, provides no such specific dictate. It states instead that pre-judgment interest shall be awarded when "the obligation to pay and the amount due had become certain, definite, and liquidated by a specific date prior to the judgment." *Buxton*, 770 A.2d at 165. But, the Breslers argue, language from the Maryland Court of Special Appeals indicates that the entry of a verdict converts a claim from unliquidated to liquidated, so that until final judgment is entered, there should be an award of pre-judgment interest. *See Baltimore Cnty., MD v. Aecom Servs., Inc.*, 28 A.3d 11 (Md. Ct. Spec. App. 2011). The Court disagrees.

In *Aecom*, a jury awarded Defendant/Counterclaim Plaintiff Aecom Serices, Inc. ("Aecom") damages in relation to a contract dispute with Baltimore County, Maryland. On cross-appeal, Aecom argued that the trial court erred by failing to submit the issue of pre-judgment interest to the jury. In rejecting this contention, the Court of Special Appeals concluded that "where breach of contract damages are unliquidated or not reasonably ascertainable until the verdict, a party is not entitled to a discretionary determination on the issue of pre-judgment interest by the jury, prior to the verdict in the case." *Aecom*, 28 A.3d at 40. According to the Breslers, this necessarily means that the reverse is true, *i.e.*, that upon entry of a verdict a claim becomes "certain, definite, and liquidated."

This line of reasoning stretches the language in *Aecom* too far, and ignores the possibility that a court might reduce a jury's verdict, or throw it out in its entirety and set the case in for a new trial. *See* Fed. R. Civ. P. 59. As the Tenth Circuit explained in refusing to award post-

---

[8] *See also* Stephen C. Fulton, *Interest on Money Damages for Periods Before and After Judgment: A Guide for the Massachusetts Practitioner*, 85 Mass. L. Rev. 146, 151–52 (2001) (discussing Massachusetts's application of post-verdict/pre-judgment interest).

verdict/pre-judgment interest, because a verdict is subject to change before entry of the judgment, "a verdict is not final liquidation of sum due until judgment." *Russo v. Ballard Med. Products*, 550 F.3d 1004, 1023 (10th Cir. 2008) (internal quotation and citation omitted). The Maryland Court of Appeals has likewise identified the entry of judgment as the moment at which a sum due becomes certain, leaving the matter of pre-judgment interest to the discretion of the fact-finder as opposed to awarded as a "matter of right." *See Ver Brycke*, 843 A.2d at 777 ("[T]he Court of Special Appeals rightly determined that [defendants'] obligation to repay the Ver Bryckes was uncertain prior to the date of judgment. As such, the trial judge was left to her discretion to determine whether pre-judgment interest was warranted.").

The Court embraces this view. WTC's obligation to pay was not "certain" upon the entry of the verdict, nor was the amount due the Breslers "definite," since it was clearly subject to change by the Court. The Court finds that the Breslers are not entitled to post-verdict/prejudgment interest as a "matter of right."

### 2.

Even under the discretionary standard, the Court is not inclined to award the Breslers post-verdict/pre-judgment interest. While, again, no Maryland case has specifically addressed the propriety of awarding post-verdict/pre-judgment interest such as sought here, there is instructive language in Maryland cases with respect to the discretionary component of pre-judgment interest.

"The purpose of pre-judgment interest is to compensate the aggrieved party for the deprivation of money it was owed, primarily the income that the money could have earned." *Imgarten*, 383 F. Supp. 2d at 848. "Under Maryland law, the trial court, which has substantial

discretion, should be guided by the 'equity and justice appearing between the parties.'" *Id.* (quoting *I.W. Berman Props. v. Porter Bros., Inc.*, 344 A.2d 65, 79 (Md. 1975).

In *Imgarten*, the court concluded that the defendant should pay pre-judgment interest because it had adopted a "scorched earth defense" by offering no amount of money for years after the court entered summary judgment against it. Here, however, no judgment was entered against WTC until March 25, 2015. There was therefore no definite amount owed to the Breslers prior to the Court's Order of that date. Nor can it fairly be said that WTC engaged in any intentional delay to the detriment of the Breslers. WTC submitted its briefs in accordance with a schedule ordered by the Court and consented to by counsel. The parties then went forward, mutually, to brief additional issues through November 2014. In balancing the equities, the Court believes WTC should not be obliged to bear the substantial amount in interest (over $1 million) that the Breslers seek for a delay that it did not unfairly occasion. The Breslers are awarded no post-verdict/pre-judgment interest.

**3.**

The Breslers, however, are entitled to post-judgment interest at the federal legal rate. While WTC argues that any award of interest would be improper because the Breslers' expert, Robert Pugh, included interest in his damages calculations, that fact is immaterial. "[O]nce a judgment is obtained, interest thereon is mandatory without regard to the elements of which the judgment is composed." *Perkins v. Standard Oil Co. of California*, 487 F.2d 672, 675 (9th Cir. 1973); *see also Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc) ("[T]he district court should have ordered that postjudgment interest would accrue on $147,885.21, the $87,500 proceeds of the insurance policy plus the pre-judgment interest awarded by the court.").

11

Accordingly, the Breslers will be awarded simple post-judgment interest on the $23,361,692 in damages at the federal legal rate, from March 25, 2015 until paid. *See* 28 U.S.C. § 1961. "Interest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b).

### IV.

For the foregoing reasons, the Breslers' Motion to Alter/Amend Judgment (Paper No. 668) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

A separate Order will issue.

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 7, 2015