IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FLEUR S. BRESLER,** *as Co-Personal Representative of the Estate of Charles S. Bresler*, **and SIDNEY BRESLER,** *Individually and as Co-Personal Representative of the Estate of Charles S. Bresler* | * * * * * * * | |
| Plaintiffs | * * | Civil No.    **PJM 09-2957** |
| v. | * * | |
| **WILMINGTON TRUST COMPANY,** *et al.* | * * * | |
| Defendants | * | |

_____

| | | |
|---|---|---|
| **FLEUR S. BRESLER,** *as Co-Personal Representative of the Estate of Charles S. Bresler*, **and SIDNEY BRESLER,** *as Co-Personal Representative of the Estate of Charles S. Bresler* | * * * * * * | |
| Plaintiffs | * * | Civil No.    **PJM 12-3295** |
| v. | * * | |
| **WILMINGTON TRUST COMPANY** | * * * | |
| Defendant | * | |

## MEMORANDUM OPINION

Sidney Bresler, individually, and Fleur Bresler and Sidney Bresler, personal representatives of the Estate of Charles S. Bresler (collectively, "Plaintiffs") have filed a Motion to Enforce Supersedeas Bond, ECF No. 712, and a Motion for Bill of Costs, ECF No. 713. Wilmington Trust Company ("WTC") opposes the motions.

1

On January 30, 2014, a jury returned a substantial verdict in favor of Plaintiffs and against Defendants based on breach of contract.[1] On August 18, 2015, the Court entered a Final Order of Judgment in favor of Plaintiffs in the amount of $28,274,253.79,[2] along with post-judgment interest.[3] ECF No. 688. On September 8, 2015, the Court approved WTC's Unopposed Motion for Approval of Supersedeas Bond, staying execution on, or any proceeding to enforce, the judgment pending determination of the appeal of WTC from that Judgment. ECF No. 690. The Supersedeas Bond between WTC and Western Surety Corporation was in the amount of $33,929,604.55 (equivalent to 120% of the Judgment).[4]

---

[1] A number of other claims—among them claims of professional negligence, negligent misrepresentation, and fraud and deceit—which Plaintiffs brought against WTC and other defendants, as well as counter-claims by Defendants against Plaintiffs, were held in abeyance pending the outcome of the trial on the breach of contract claims and not tried. Following the January 30, 2014 verdict, the Court further deferred acting on the merits of these remaining claims because it appeared likely that a successful result for Plaintiffs on the tried claims might moot most if not all remaining claims. In fact, in order to facilitate the appeal of the breach of contract claims, pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Court severed the non-contract claims and re-assigned them to a separate docket, Civil No. 15-1557-PJM.

[2] The Judgment consisted of (a) $19,461,692 in damages arising out of WTC's failure to make loans to cover the premiums on three life insurance policies held by the Charles S. Bresler Irrevocable Insurance Trust; (b) $3,900,000 in reimbursement of insurance policy premium payments Plaintiffs made with respect to the Fleur S. Bresler 2009 Preservation Trust; and (c) $4,912,561.79 as damages attendant to WTC's failure to timely return collateral to the Charles Bresler Estate.

[3] The Court denied Plaintiffs pre-judgment interest. The Court did, however, award post-judgment interest at the federal statutory rate on $28,274,253.79 from August 18, 2015—the date of the Court's Final Order of Judgment—until paid or satisfied. ECF No. 688. Additionally, with regard to the jury verdict, $23,361,692, the Court awarded post-judgment interest at the federal statutory rate from March 25, 2015—the date of the Court's entry of Partial Judgment in favor of Plaintiffs on the jury's verdict—to August 18, 2015. The Court did not award post-judgment interest from March 25, 2015 on the $4,912,561.79, the damages attendant to WTC's failure to timely return collateral, because the Court, not the jury, made that award, and did not enter judgment *vis a vis* that amount until August 18, 2015.

[4] The Supersedeas Bond reads as follows:

> [Wilmington] and Western Surety Corporation . . . bind themselves . . . in the sum of $33,929,604.55 . . . and each undertakes and promises to pay [Plaintiffs] all damages, costs, and interest that may be awarded to them following the appeal of this matter if: (a) the Judgment so appealed is affirmed; (b) the appeal is dismissed; or (c) [Wilmington] fails to pay promptly all sums awarded against them in or following the appeal in this action, including any costs that the Court of Appeals may award if the Judgment is modified.

On September 14, 2015, WTC appealed the Court's order on the Jury verdict to the Fourth Circuit, ECF No. 691, and on April 20, 2017, the Fourth Circuit affirmed the judgment as well as other rulings the Court had made. ECF No. 708. WTC filed a petition for rehearing and rehearing *en banc*, both of which were denied by the Fourth Circuit on May 16, 2017. ECF No. 710. The Fourth Circuit's mandate issued on May 24, 2017. ECF No. 711. WTC now says it intends to petition the Supreme Court for certiorari. At no time, however, has WTC sought to have the Fourth Circuit stay its mandate or make any ruling as to a further supersedeas bond.

Accordingly, in their Motion to Enforce Supersedeas Bond, ECF No. 712, Plaintiffs request the Court to direct the surety to promptly satisfy the judgment, plus post-judgment interest through the date of payment.[5] In its Motion for Bill of Costs, ECF No. 713, Plaintiffs also seek an award of costs in the amount of $41,821.01.[6] WTC has asked the Court to defer ruling on Plaintiffs' motions, alleging they are premature because it intends to seek review of the Fourth Circuit's decision in the Supreme Court.

In accordance with Rule 13 of the Rules of the Supreme Court and 28 U.S.C. §2101(c), WTC has 90 days from the date of the denial of the petition for rehearing—May 16, 2017—to petition the Supreme Court for a writ of certiorari. That means that WTC must file its petition for certiorari by no later than August 14, 2017. As of today, July 25, 2016, WTC has yet to file a petition for certiorari.

---

Although the $33,929,604.55 Supersedeas Bond is substantial, whether or not it is sufficient to cover WTC's purportedly forthcoming petition for certiorari to the Supreme Court is a question for the Fourth Circuit to decide. *See* Fed.R.App.P. 41(d)(2) ("The court may require a bond or other security as a condition to granting or continuing a stay of the mandate.").

[5] Plaintiffs contend, and WTC does not dispute, that despite several requests by electronic mail and by telephone, WTC has failed to satisfy the judgment.

[6] The costs consist of: $21,316.90 in costs for obtaining transcripts for depositions noted by Plaintiffs; $11,474.15 in costs for obtaining transcripts for depositions noted by Defendants; $2,604.60 in costs for obtaining transcripts from trials and hearings; $5,344.68 for copying costs, and $1,080.86 for witness fees.

The mandate from the Fourth Circuit issued on May 24, 2017 but WTC failed to seek a stay of the issuance of the mandate prior to that date. *See* Fed.R.App.P. 41(d)(2) ("A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. The motion must be served on all parties and must show that the certiorari petition would present a substantial question and that there is good cause for a stay."); Local Rule 41 of the Local Rules of the Fourth Circuit ("A motion for stay of the issuance of the mandate shall not be granted simply upon request. Ordinarily the motion shall be denied unless there is a specific showing that it is not frivolous or filed merely for delay. A motion to stay the mandate pending the filing of a petition for certiorari must show that the certiorari petition would present a substantial question and set forth good cause for a stay. Stay requests are normally acted upon without a request for a response.").

Because its mandate has issued, the Fourth Circuit apparently lacks jurisdiction to issue a stay unless and until it recalls its mandate. *See Alphin v. Henson*, 552 F.2d 1033, 1035 (4th Cir. 1977) ("Our control over a judgment of our court continues until our mandate has issued."); *Shahin v. PNC Bank NA,* 678 F. App'x 62, 63 (3d Cir. 2017) ("Once the mandate is issued, the circuit court's appellate jurisdiction formally ends. . . . [T]he district court is [then] required to take any action consistent with the mandate . . .") (quoting 3-28 J. Moore, *et al.*, Moore's Manual: Federal Practice and Procedure § 28.94[2] (2016)). *See also* Wright and Miller, 16AA Fed. Prac. & Proc. Juris. § 3987 (4th ed.) ("[R]ecall of a mandate, after it has once issued, is deemed to be among the inherent powers of a court of appeals, reserved for special circumstances and sparingly exercised."). Thus, in order for WTC to obtain a stay of the mandate from the Fourth Circuit, it must convince the Fourth Circuit first to recall its mandate, then to issue the stay.

4

WTC may be correct that its appeal is not fully exhausted until it fails to file a petition for certiorari by the deadline (August 14, 2017) or until the Supreme Court denies its petition (if one is filed). But WTC is not entitled to a free ride without obtaining rulings from the Fourth Circuit under the circumstances. Accordingly, the Court will **DEFER** ruling on Plaintiffs' Motion to Enforce Supersedeas Bond, ECF No. 712, and their Motion for Bill of Costs, ECF No. 713, but only for a brief time. Within 14 days, WTC shall **SHOW CAUSE** in writing why it has not yet obtained a stay of the mandate from the Fourth Circuit.[7] If WTC does not obtain a stay from the Fourth Circuit by August 14, 2017—the deadline for its petition for certiorari—the Court will grant Plaintiffs' motions.[8]

A separate Order will ISSUE.

/s/<br>
**PETER J. MESSITTE**<br>
**UNITED STATES DISTRICT JUDGE**

July 25, 2017

---

[7] The Court is perplexed as to WTC's delay in submitting the necessary filings in the Fourth Circuit, especially considering that on June 14, 2017, it represented that "WTC anticipate[d] filing [a motion for a stay of the issuance of a mandate] with the Fourth Circuit th[at] week." WTC's Response in Opposition at 2, ECF No, 715.

[8] The Court cannot but wonder whether WTC is acting for any reason other than delay. For example, with respect to the $4,912,561.79 in damages awarded to Plaintiffs with respect to Counts 1, 2, and 3 of the Complaint in Civ. No. 12-3295 (i.e., the return of collateral to Charles S. Bresler's Estate upon his death), it is hard to believe that the Supreme Court would vacate that item. Yet WTC refuses to pay even that amount. That damage award related to Clause V.d. of the Investment Management Agreement entered into by Charles Bresler and WTC, which states, "Upon [] termination, Investment Agent shall deliver to Principal, or to the executor or administrator of Principal's estate, as the case may be, all of the property held by it hereunder, if any . . ." Notwithstanding WTC's vague suggestion that "violation[s] of Rule 26 resulted in harm that permeated and infected the entirety of the jury's award of compensatory damages and the Court's entry of Final Judgment," WTC's Response in Opposition at 2-3, it is virtually impossible to understand how this particular component of the damages award could be impacted by further appeal. It is worth noting that with respect to this part of the damage award, even Judge Wynn, who dissented from part of the Fourth Circuit ruling, concurred with the majority in holding "that the contract required that [WTC] return collateral posted by [Charlie Bresler] upon [his] death." Judgment of the Fourth Circuit in No. 15-2086, 42 (Wynn's Dissent), ECF No. 708.

5